# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL MANDELL and DOLLY CARABALLO, h/w,** | No. 3:05cv1503 |
| **Plaintiffs** | (Judge Munley) |
| v. | |
| **SKI SHAWNEE, INC.,** | |
| **Defendant** | |

## MEMORANDUM

Before the court for disposition is Defendant Ski Shawnee, Inc.'s motion for summary judgment in this case involving a snowtubing accident. Defendant asserts that a release executed by Plaintiff Daniel Mandell precludes suit. Plaintiffs oppose the motion for summary judgment. The matter has been fully briefed and is ripe for disposition.

**Background**

This case involves allegations that Plaintiff Daniel Mandell suffered injuries in a snowtubing hill accident at the Shawnee Mountain snowtubing facility on February 11, 2005. (Compl. ¶ 6). While coming to the end of the snowtubing course, plaintiff's tube spun around so that he faced backwards. (Pl. Dep. at 28). As he proceeded backwards, the tube struck "something" and plaintiff flew off from his tube, doing a backwards flip. (Id.) Plaintiff's right foot landed between or on the mats located at the bottom of the course, and his body twisted causing him injuries. (Id.). Before snowtubing on the day in question, plaintiff executed a document entitled "Snow Tubing Acknowledgment of Risk and Agreement Not to Sue" (hereinafter "release"). (Pl. Dep. at 24-25).

Plaintiff has brought suit to recover for the injuries that he suffered in the snowtubing accident. The complaint alleges that the accident caused the plaintiff to suffer great physical pain and anguish, severe shock to the

nervous system, humiliation and embarrassment. (Compl. ¶ 12). He asserts that the accident was a direct result of the carelessness and negligence of the defendant. (Id.). Dolly Caraballo, the wife of Plaintiff Daniel Mandell, has asserted a cause of action for loss of consortium. (Compl. ¶¶ 16-17). At the close of discovery, the defendant filed a motion for summary judgment. Defendant claims that it is entitled to summary judgment because plaintiffs' claim is barred by the release.

**Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332. The plaintiffs are citizens of New York state, and the defendant is a corporation with a principal place of business in Delaware, Pennsylvania. Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

As noted above, defendant argues that it is entitled to summary judgment because plaintiffs' claim is barred by the release. Plaintiff's position is that the release is inapplicable to claims of "gross negligence" or "defendants' placement of hazards and obstacles that are not fixed, nor the maintenance of such obstacles." (Doc. 18, Pl. Brief at 7). Therefore, according to the plaintiffs, the release does not relieve the defendant from liability in the present case.[1]

---

[1] The release at issue, provides in pertinent part:
**SNOW TUBING ACKNOWLEDGEMENT
OF RISK AND**

3

Three conditions must be met for an exculpatory provision to be valid. If these conditions are met, several other standards must be met before a release can relieve a party from liability. These conditions are: 1) The clause cannot violate any public policy; 2) the contract relates entirely to the private affairs of the parties; and 3) "the contract is not a contract of adhesion to which one party simply adheres to a contract because he has no power to alter it." Topp Copy Products, Inc. v. Singletary, 626 A.2d 98, 101 (Pa. 1993).

The parties raise no argument as to these conditions. The release at

---

**AGREEMENT NOT TO SUE**
**THIS IS A CONTRACT READ IT!**

1. I understand and acknowledge that snow tubing is a dangerous risk sport and that there are inherent and other risks associated with the sport and that all of these risks can cause serious and even fatal injuries.
2. I understand that part of the thrill, excitement and risk of snow tubing is that the snow tubes all end up in a common, runout area at various times and speeds and that it is my responsibility to try to avoid hitting another snow tuber and it is also my responsibility to try to avoid being hit by another snow tuber, but that not withstanding these efforts by myself and other snow tubers, there is a risk of collisions.
3. I acknowledge and understand that some, but not necessarily all, of the risks of snow tubing are the following: . . . *the chance that a patron can fall out, be thrown out or otherwise leave the snow tube; . . . *collisions in the runout area and other locations of the snow tubing facility, with such collisions happening between snow tubes, between a snow tube and another patron, between a snow tube and a snow tubing facility attendant, between snow tubing patrons who may or may not be in or on a snowtube at the time of the collision and other sorts of collisions; collisions with fixed objects, obstacles or structures located within or outside of the snow tubing facility; . .
5. I agree and understand that snow tubing is purely a voluntary, recreational activity and that if I am not willing to acknowledge the risks and agree not to sue, I should not go snow tubing.
6. **IN CONSIDERATION OF THE ABOVE AND OF BEING ALLOWED TO PARTICIPATE IN THE SPORT OF SNOW TUBING, I AGREE THAT I WILL NOT SUE AND WILL RELEASE FROM ANY AND ALL LIABILITY SKI SHAWNEE, INC. IF I OR ANY MEMBER OF MY FAMILY IS INJURED WHILE USING ANY OF THE SNOW TUBING FACILITIES OR WHILE BEING PRESENT AT THE FACILITIES, EVEN IF I CONTEND THAT SUCH INJURIES ARE THE RESULT OF NEGLIGENCE OR ANY OTHER IMPROPER CONDUCT ON THE PART OF THE SNOW TUBING FACILITY.**
7. **I FURTHER AGREE THAT I WILL INDEMNIFY AND HOLD HARMLESS SKI SHAWNEE, INC.** from any loss, liability, damage or cost of any kind that may incur as the result of any injury to myself, to any member of my family or to any person for whom I am signing this Agreement, even if it is contended that any such injury as [sic] caused by the negligence or other improper conduct on the part of Ski Shawnee, Inc.
. . .
10. I have read and understood the foregoing Acknowledgment of Risks and Agreement Not to Sue and am voluntarily signing below, intending to be legally bound hereby.
(Emphasis in original)(Release, Ex. B to Defendant's Motion for Summary Judgment).

issue does not violate any public policy, it relates entirely to the private affairs of the parties and is not a contract of adhesion as each party is free to participate or to choose not to- that is, the plaintiff was under no compulsion, economic or otherwise to engage in snowtubing. <u>Valeo v. Pocono International Raceway, Inc.</u>, 500 A.2d 492, 493 (Pa. Super. Ct. 1985).

We find, therefore, that the initial conditions for a valid release are met.  Thus, we must consider the four standards used in determining the enforceability of a valid release.   Generally, contracts that provide immunity from liability, i.e. releases, are not favorites of the law and are strictly construed.  <u>Valeo v. Pocono International Raceway, Inc.</u>, 500 A.2d 492, 493 (Pa. Super. Ct. 1985) (citing <u>Employers Liability Assurance Corp. v. Greenville Business Men's Ass'n</u>, 224 A.2d 620, 623 (Pa. 1966)).  The guiding standards that we must apply are as follows:

> 1) the contract language must be construed strictly, since exculpatory language is not favored by the law;
> 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties;
> 3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and
> 4) the burden of establishing the immunity is upon the party invoking protection under the clause.

<u>Topp Copy Products, Inc. v. Singletary</u>, 626 A.2d 98, 99 (Pa.1993)

In the instant case, the plaintiff asserts that the release is not enforceable against him because its language does not cover gross negligence or defendants' placement of hazards and obstacles that are not fixed or the maintenance of such objects.   We will address these issues separately.

5

1) Gross negligence

Plaintiffs assert that they allege gross negligence on the part of the defendant. The release, which must be strictly construed, does not explicitly state that it covers gross negligence.  Therefore, plaintiffs' position is that the release does not bar the instant suit.  We agree.

Plaintiffs are correct that the release does not use the term "gross negligence."  The relevant portion of the release reads:

> **I AGREE THAT I WILL NOT SUE AND WILL RELEASE FROM ANY AND ALL LIABILITY SKI SHAWNEE, INC. IF I OR ANY MEMBER OF MY FAMILY IS INJURED WHILE USING ANY OF THE SNOW TUBING FACILITIES OR WHILE BEING PRESENT AT THE FACILITIES, EVEN IF I CONTEND THAT SUCH INJURIES ARE THE RESULT OF NEGLIGENCE OR ANY OTHER IMPROPER CONDUCT ON THE PART OF THE SNOW TUBING FACILITY.**

(Release at ¶ 6, Ex. B to Defendant's Motion for Summary Judgment)(emphasis in the original).  We find that such language is insufficient to cover plaintiff's claim.

The Pennsylvania Superior Court addressed the issue of whether an indemnity agreement that covered negligence also covered gross negligence in the case of <u>Ratti v. Wheeling Pittsburgh Steel Corp.</u>, 758 A.2d 695 (Pa. Super. Ct. 2000).  The court was called upon to determine whether "an express provision concerning negligence also includes gross negligence within its scope." <u>Id.</u> at 703.  In analyzing the issue, the court noted that "gross negligence constitutes conduct more egregious than ordinary negligence but does not rise to the level of intentional indifference to the consequences of one's acts." <u>Id.</u>  Because gross negligence is more egregious than ordinary negligence the court rejected the "notion that the mere use of the term negligence encompasses gross negligence.  Such a

6

construction would put the indemnitor at the mercy of the indemnitee's conduct without knowing precisely what types of conduct it was willing to accept in shifting the risk of loss." Id. at 705. The court concluded that it would be improper to read "gross negligence" into an indemnity provision where it was not specifically set forth. Id.

We are faced with the identical issue with regard to the instant exculpatory agreement. As set forth above, the release must be strictly construed. As the court explained in Ratti, gross negligence is different from, and more egregious than, ordinary negligence. The exculpatory clause at issue does not mention gross negligence; therefore, we find that gross negligence is not covered. If we were to find otherwise, in signing the release, the plaintiff would not have known from what type of conduct he was releasing the defendant.[2]

Our conclusion is especially apt in that we must construe any ambiguity in the contract against the party seeking immunity from liability,

---

[2] The Pennsylvania Superior Court faced a similar issue in Valeo v. Pocono International Raceway, Inc., 500 A.2d 492 (Pa. Super. Ct. 1985). In that case, the plaintiff signed a release that relieved the defendant "from all liability . . . for all loss or damage and any claim or demands therefore [sic] on account of injury to the person or property . . ., whether caused by the negligence of Releases or otherwise. . . " Id. at 492-93. The plaintiff asserted that the release did not cover his claim of gross negligence. The court found, however, that the "language of the exculpatory clause was broad enough to exclude liability for all degrees of negligence." Id. at 493. We find that Valeo is not controlling in the instant case. Valeo provides no analysis as to the difference between negligence and gross negligence. Ratti, upon which we rely, does in fact provide the relevant analysis and is a more recent case than Valeo.

7

here the defendant.[3]  Topp Copy, 626 A.2d at 99.

2) Placement of hazards and obstacles

Plaintiffs' second argument is that the release does not cover defendants' placement of hazards and obstacles that are not fixed or the maintenance of such objects.  Plaintiff asserts that the accident was caused by a mat located at the end of the snow tubing run and the defendant's maintenance of the mat.   Such a hazard is not mentioned in the release, therefore, the accident is not covered by the release according to the plaintiffs.   The defendant asserts that the language of the release is broad enough to cover the accident.   After a careful review, we agree with the plaintiffs.

As was set forth above, an exculpatory contract must state the intention of the parties with the greatest particularity, and must be strictly construed.  Topp Copy, 626 A.2d at 99.   Plaintiff asserts that the instant accident is not covered by the release, because the release at issue is silent on the issue of collisions with objects that are not fixed, such as rubber mats, or collisions caused by a failure to maintain such mats.  Defendant, citing to the release language, asserts that collisions with an obstacle is covered by the release.

The language that the defendant cites warns of various collisions, including "collisions with fixed objects, obstacles or structures located within or outside of the snowtubing facility."   (Release at ¶ 3 , Ex. B to Defendant's Motion for Summary Judgment.)   This language is, at best, ambiguous as to whether it applies to non-fixed objects.  As such it will be

---

[3]It will, of course, be for the jury to decide whether the defendant acted with gross negligence.

construed against the party seeking immunity, that is, the defendant.   Id. Accordingly, we conclude that the language does not apply to collisions with non-fixed objects.   Plaintiffs assert that the collision was with such a non-fixed object, a mat.   The collision, therefore, if it was with a non-fixed rubber mat, is not covered by the release, and summary judgment for the defendant is inappropriate.[4]

**Conclusion**

Plaintiff Daniel Mandell suffered injuries while using the defendants snowtubing facility.  Prior to using the facility, he signed a release, relieving the defendant from liability for any injury he might sustain while using the facility, even if defendant's negligence or other acts caused those injuries. The release, however, is inapplicable to gross negligence or collisions between snowtubers and non-fixed obstacles.   Therefore, summary judgment is not appropriate for the defendant.  An appropriate order follows.

---

[4]It will be for the jury to determine the cause of the accident.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL MANDELL and DOLLY CARABALLO, h/w,** | : | **No. 3:05cv1503** |
| **Plaintiffs** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| **SKI SHAWNEE, INC.,** | : | |
| **Defendant** | : | |

## ORDER

**AND NOW**, to wit, this 11th day of January 2007, the defendant's motion for summary judgment (Doc. 14) is hereby **DENIED**.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**